UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-CV-82279-MARRA/JOHNSON

PETER S. BROBERG, as Trustee
of the ORCHID ISLAND TRUST,

    Plaintiff
vs.

WILLIAM T. GERRARD, individually,

    Defendant.
_____/

## ORDER AND OPINION ON DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant, William T. Gerrard's, Motion to Dismiss [DE 4]. The motion is fully briefed and ripe for review. See DE 7, 11. The Court has carefully considered the filings and is otherwise fully advised in the premises.

## I. INTRODUCTION

Plaintiff, Peter S. Broberg, as Trustee of the Orchid Island Trust ("The Trust"), sues the defendant, William T. Gerrard ("Gerrard") as an individual under 42 U.S.C. § 1983 for violations of the Equal Protection Clause (Count I) and the Due Process Clause (Count II) of the Fourteenth Amendment to the United States Constitution. See DE 1, Complaint ("Compl.") ¶¶ 36, 43. The Trust also sues Gerrard under Florida law for tortious interference with a business relationship (Count III). Compl. ¶ 53. Gerrard moves to dismiss the complaint for failure to state a claim. DE 4.

The Trust's Complaint alleges, and the Court accepts as true for purposes of the instant motion, the following: The Trust purchased a residential lot (the "Lot") located in the Town of Manalapan from Gerrard on August 22, 2005. Compl. ¶ 6. Gerrard resided on property located directly adjacent to the Lot. Compl. ¶ 8. In the Lot's deed, Gerrard imposed restrictions on the size and location of any residences to be built in order to maintain an unobstructed view of the Intercoastal Waterway from his residence; Gerrard had also sought a 20 foot easement for his personal use, but the request was refused by the Trust. Compl. ¶ 9.

The Lot was located in district R1-B of the Town of Manalapan. Compl. ¶ 16. The government of the Town of Manalapan was comprised of a six member Town Commission; Gerrard was a member of the Town Commission, and later, the Town Mayor. Compl. ¶ 14. The Town Commission approved zoning code changes and appointed several boards, including the Architectural Commission and the Zoning Commission. Compl. ¶ 15. Beginning in March 2006, Gerrard misused his political influence to push for a change in the zoning code of district R1-B that expanded the setbacks for any new construction. Compl. ¶¶ 17-19. The change was approved on June 27, 2006, with little or no input from Town residents. Compl. ¶¶ 19-20. No impact study was performed, no comprehensive study of the Town of

Manalapan's zoning code was considered or performed, and no outside professionals were consulted. Compl. ¶ 20.

On July 10, 2006, the Trust obtained a building permit for the Lot that was valid for 24 months. Compl. ¶ 21. In order to obtain the permit, the Trust was required to appear at two hearings before the Architectural Commission. Id. Gerrard, although not a member of the Architectural Commission, attended the hearings and made comments on the proposed design in an attempt to improperly influence the Commission's decision on the building permit. Compl. ¶ 22. Because the Trust had obtained approvals for a site plan, architectural designs, and landscape designs prior to the side setback change in district R1-B's zoning code, the Architectural Commission issued the building permit according to the old setback requirements. Compl. ¶ 23. Due to a series of unforeseen delays, however, no construction actually took place on the Lot by May 2008. Compl. ¶ 25.

On May 2, 2008, when the initial 24-month building permit neared expiration, the Trust requested an 18-month extension for its building permit; these requests were routinely requested and granted by the Town Commission. Compl. ¶ 26. Despite his undisclosed personal interest in the matter, Gerrard opposed the extension when it went before the Commission. Compl. ¶ 27. The extension was eventually denied by the Town Commission. Id. The expiration of the original permit forced the Trust to seek a new

permit adhering to the larger setback requirements and significantly decreased the Lot's value. Compl. ¶ 30-31. The Trust had already expended monies for the design of the residence. Compl. ¶ 54. The Trust eventually sold the undeveloped Lot for a substantial loss. Compl. ¶ 33.

## II. STANDARD OF REVIEW

A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted. In order to survive dismissal, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Plausible inferences may thus be drawn from the pleading, but the complaint still must provide "enough factual matter (taken as true) to suggest" the required element. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). In a motion to dismiss, "allegations in the complaint are viewed in the light most favorable to the plaintiff." Watts v. Florida Intern. University, 495 F.3d 1289, 1295 (11th Cir. 2007). Although detailed allegations are not required by Rule 8(a), there must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The Eleventh Circuit no longer applies a heightened pleading standard to civil rights complaints brought under 42 U.S.C. § 1983 against individuals who are entitled to qualified immunity. See Randall v. Scott, __ F.3d __, 2010 WL 2595585 (11th Cir. Ga. June 30,

2010).

## III. DISCUSSION

The gravamen of the Trust's Complaint is that Gerrard prevented development on the Lot via the manipulation of the political system of the Town of Manalapan; according to the Trust, Gerrard "successfully caused the amendment of section 151.097 of the Town Ordinances," thereby dealing a fatal blow to the Trust's plans to construct a residence on the Lot. Compl. ¶¶ 38, 46, 53. The Trust contends that this zoning code change was a form of arbitrary and capricious discrimination that violated its rights under the Equal Protection Clause (Count I) and the Due Process Clause (Count II). Id. As Gerrard allegedly caused the zoning change for his own benefit, the Trust sues him not in his official capacity but as an individual.

Gerrard contends that he cannot be personally liable to the Trust because the Trust's injury stems from the Town Commission's actions. DE 4 at 8. Gerrard claims that the other Commission members voted in favor of both the zoning change and the denial of the building permit extension. Id. Since the final decision-maker was the Town Commission, Gerrard argues, he cannot be individually liable for a constitutional violation based on the change in the zoning code. Id.

In cases challenging municipal actions, "[t]he 'decisionmaker' inquiry addresses who has the power to make official decisions and, thus, be held

5

*individually* liable." Quinn v. Monroe County, 330 F.3d 1320, 1326 (11th Cir. 2003). In Quinn, a library director sued a county administrator under 42 U.S.C. § 1983, alleging that the administrator fired her in retaliation for exercising her First Amendment rights. Id. at 1322. The administrator argued that because his determination was appealed to and affirmed by the independent Career Services Council, there was no causal link between the "alleged retaliatory animus" and the director's eventual termination. Id. at 1326. The Eleventh Circuit rejected this argument, however, holding that the county administrator was the "official decisionmaker" because he had "the authority not merely to recommend [the director's] termination but to immediately effectuate her termination." Id. at 1328. The Court of Appeals explained that "an official or formal decision-maker may often be identified by a rule, e.g., an employee handbook or organizational chart, or in the case of public entity employers, by examining the statutory authority of the official alleged to have made the decision." Id. This authority made the administrator the official decisionmaker, regardless of the fact that the termination was later reviewed and upheld by an unbiased council. Id.

In a later case, Kamensky v. Dean, 148 F. App'x. 878 (11th Cir. 2005), the Eleventh Circuit addressed the issue of whether a government official *without* decisionmaking power could be held individually liable for recommending a retaliatory termination to a supervisor. As in Quinn, the

plaintiff in Kamensky alleged that she was terminated in retaliation for speaking out against the defendant. Id. at 879. Unlike Quinn, the defendant in Kamensky did not actually have the authority to terminate the plaintiff; according to county policy and procedure, the ultimate authority for her termination resided with the defendant's supervisor. Id. The plaintiff alleged, however, that the supervisor merely "rubber-stamped" the defendant's recommendation of termination without conducting an independent review.[1] Id. at 880. The Court of Appeals explicitly declined to extend the "rubber stamp" exception to suits against individuals, and held that because the defendant's supervisor was the decisionmaker, the defendant could not be individually liable. Id.

Here, the Trust's Complaint does not allege that Gerrard had unilateral power to effect changes in the Town Ordinances. Rather, the Trust alleges that Gerrard abused his political influence through "sheer bullying and deceptive tactics" to cause the Town Commission to pass the zoning code change and to deny the Trust's building permit extension. Compl. ¶ 18. In essence, the Trust alleges that, due to Gerrard's political position and

---

[1] Ordinarily, municipalities may not be held liable for the tortious actions of their subordinates. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Courts sometimes make an exception to this rule when a municipality with decisionmaking authority merely "rubber stamps" a discriminatory recommendation without an independent investigation. See Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999).

influence, the Town Commission rubber-stamped the proposed changes in the zoning code without independent review and investigation. Even accepting the Trust's allegations that Gerrard exercised improper influence on Commission members to further his own interests, however, it is clear that Gerrard did not have decisionmaking authority to enact amendments to ordinances or to reject permit extensions. Gerrard was only one member of the Commission, and thus, as a matter of law, cannot be individually liable for the actions of the Commission. See Sinclair v. Town of Yankeetown, No. 1:07-CV-035-SPM, 2008 WL 660089, at *2 (N.D. Fla. Mar. 7, 2008) (mayor recommended termination to the town council, but "the final decision was up to the council members," and so the mayor could not be individually liable); Sanders v. City of Selma, No. Civ.A.04-753 B, 2005 WL 3411342, at *4 (S.D. Ala. Dec. 13, 2005) (city council, rather than mayor, was the decisionmaker, even if council rubber-stamped mayor's recommendation).

Accordingly, the Court finds that the Trust has not pled a violation of its constitutional rights under either the Equal Protection Clause or the Due Process Clause because Gerrard was not the decisionmaker and could not change the zoning code or deny permit extensions by himself.

Furthermore, while Federal Rule of Civil Procedure Rule 15(a) states that leave to amend a complaint "shall be freely given when justice so requires," "trial courts have broad discretion in permitting or refusing to grant leave to amend." Garfield v. NDC Health Corp., 466 F.3d 1255, 1270

(11th Cir. 2006) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007). In this case, the Court finds that any amendment to the Complaint would be futile, because the Trust could plead no set of facts that would permit it to obtain relief in light of the Eleventh Circuit's decisionmaker precedent. See Hall v. United Ins. Co. of America, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (amendment was futile since amended claims would be dismissed as a matter of law). Additionally, the Court notes that the Trust has not requested leave to amend. "A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." Wagner v. Daewoo Heavy Industries America Corp., 314 F.3d 541, 542 (11th Cir. 2002). Consequently, the Court denies the Trust leave to amend its Complaint.

## VII. CONCLUSION

Because of the foregoing reasons, the Court holds that the Trust has not pled a claim against Gerrard for violation of its rights under the Equal Protection Clause (Count I), the Due Process Clause (Count II). As such, the Court declines to exercise supplemental jurisdiction over the Trust's state law claim for tortious interference with its business relations (Count III).  28

9

U.S.C. § 1367(c)(3); Rice v. Branigar Org., Inc., 922 F.2d 788, 792 (11th Cir. 1991).  It is therefore

**ORDERED AND ADJUDGED** that Defendant, William T. Gerrard's, Motion to Dismiss [DE 4] is **GRANTED**. Counts I and II of the Complaint are dismissed with prejudice. Count III is dismissed without prejudice. The above-styled action is **REMANDED** to the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of July, 2010.

_____
KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record